**Supreme Court**

No. 2010-437-Appeal.
(NC 07-353)

Wellington Condominium        :
    Association et al.

          v.             :

Wellington Cove Condominium   :
    Association et al.

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| Wellington Condominium Association et al. | : |
| v. | : |
| Wellington Cove Condominium Association et al. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  Once again, we return to Newport to pass upon a dispute involving rights of way and waterfront property.[1] The plaintiffs, Wellington Condominium Association (WCA), Wellington Hotel Association, John Rizzo, Arthur Leonard, and Frederick Howayeck (collectively, plaintiffs), appeal from a Superior Court judgment denying their claims for an easement across the property of the defendants, Wellington Cove Condominium Association (Wellington Cove), Wellington On The Harbor Condominium Owners' Association (Wellington Harbor), and Harrington Court Condominium, LLC (Harrington Court) (collectively, defendants).  On appeal, the plaintiffs assign error to the trial justice's finding that the plaintiffs had failed to establish the elements of an implied easement as well as his conclusion that an express easement was not created by the condominium

---

[1] See, e.g., Newport Realty, Inc. v. Lynch, 878 A.2d 1021, 1024 (R.I. 2005) (concerning a wharf on the historic Newport harborfront and the streets or ways on that structure); Meyer v. City of Newport, 844 A.2d 148, 149 (R.I. 2004) (involving a marina and a public right of way to the waterfront in an area of Newport known as Waites Wharf).

declaration.[2]  For the reasons set forth herein, we affirm in part, vacate in part, and remand this case to the Superior Court.

**Facts and Travel**

The properties at issue in this case consist of neighboring condominiums located on Narragansett Bay in Newport, Rhode Island.  The parcels on which these two condominiums are located formerly were part of a unified parcel of real estate, originally owned by the declarant, a joint venture known as Wellington Hotel Associates (declarant).[3]  The parcels were developed over several years as separate condominium projects in a somewhat piecemeal fashion.[4]  In 1986, the declarant filed and recorded a declaration of condominium (declaration)—"Wellington Yacht & Racquet Club on Newport Harbor – A Condominium"—for the entire property.  The declaration further provided that the property could be developed in phases and, further, that portions of the property could be withdrawn from the condominium.

Thereafter, the declarant assigned its right to withdraw Phases IV and VI[5] to Newport Partners.[6]  As a "successor declarant," Newport Partners exercised its option to withdraw Phases

---

[2] At trial, plaintiffs argued that a prescriptive easement exists as well.  On appeal before this Court, plaintiffs do not challenge the trial justice's finding that no prescriptive easement exists.

[3] We distinguish the declarant, Wellington Hotel Associates, from Wellington Condominium Association, the master association that consists of three sub-associations and is one of the named plaintiffs in this case.  The declarant is not a party to this case.

[4] In their stipulation of facts, the parties state that Wellington Hotel Owners Association is a sub-association of WCA; likewise, plaintiffs' second verified complaint indicates that Wellington Hotel Association is the same as Wellington Hotel Owners Association because the former is described as a sub-association of WCA for hotel timeshare owners.  We treat Wellington Hotel Association and Wellington Hotel Owners Association as a single entity.

[5] Phase IV consisted of a parcel of land adjacent to Kirwins Fifth Ward Lane and the west side of the property's tennis courts.  Phase VI was designated for a marina adjacent to Phase IV.  The tennis courts are part of plaintiffs' condominium.

[6] With respect to the assignment of rights, Article 15 of the declaration establishes the following:

IV and VI in 1992.[7] The parcel of real estate remaining after the 1992 withdrawal constitutes plaintiffs' premises and the withdrawn parcels are defendants' premises. It is the legal significance of this severance that is dispositive of the issues in this appeal.

After Phases IV and VI were withdrawn, portions of defendants' premises subsequently were conveyed to various new owners. On March 13, 1997, Newport Partners conveyed the withdrawn parcel to Newport Partners LLC, a general partner of Newport Partners. Subsequently, in October of that year, Newport Partners LLC created "Wellington on the Cove Condominium" on the withdrawn parcel. That condominium consisted of three land units.[8]

---

"The declarant may assign any or all of its rights or privileges reserved or established by this Declaration or the Condominium Act in accordance with the provisions of the Condominium Act."

Under Article 14, section 14.1 of the declaration—"Reservation of Rights"—one of the rights reserved to the declarant and "its successors and assigns" is the right "to withdraw real estate from the Condominium."

[7] The option to withdraw is set forth in section 14.2 of the declaration, which reads, in pertinent part:

> "Declarant hereby explicitly reserves an option * * * to withdraw all or any portion of the Withdrawable Real Estate from the Condominium * * *. * * * Declarant expressly reserves the right to withdraw all or a portion of the Withdrawable Real Estate at any time, at different times, in any order, without limitation * * *. * * * Further, the Declarant will provide reasonable rights of way over and across the real estate withdrawn necessary to provide adequate access to any amenity located in, by, along or adjacent to Narragansett Bay."

Accordingly, the third amendment to the declaration specifically states that "[the Newport Partners], * * * as successor declarant to Wellington Hotel Associates, by assignment * * *, under the [d]eclaration * * *, pursuant to the rights reserved in Section 14.2 of the [d]eclaration hereby withdraws the real estate * * * from the Condominium."

[8] After the creation of the Wellington on the Cove Condominium, Newport Partners LLC conveyed each of the three land units to other parties: one unit was conveyed to Pulte Home Corporation, which then created a condominium named "Wellington on the Harbor Condominium – A Residential Condominium"; the remaining two units were conveyed to Goodwin Family Associates (Goodwin). Goodwin conveyed one of its two units to Waterside

The record discloses that, at the time that Newport Partners withdrew Phases IV and VI, the claimed right of way consisted of a gravel road which ran across the withdrawn parcel and alongside tennis courts belonging to plaintiffs' condominium. That right of way commonly was used as a point of access to Kirwins Fifth Ward Lane because the alternate access to Harrington Street from plaintiffs' development was blocked by a chain after 1989 and then, since 2008, by a gate that periodically is locked. The evidence established that plaintiffs used this right of way to access their tennis courts and that the gates to the tennis courts faced the right of way, separated by a two-foot-wide strip of plaintiffs' land running along the tennis courts. The claimed right of way was paved around 1999 or 2000 by the developers of the condominiums on defendants' premises. It was not until 2005 that the use of the right of way was disputed.

During the summer of 2005, a chain barrier was placed between two poles, positioned at the southern end of the claimed right of way, which impeded access by vehicle and foot traffic. The record discloses that, in the summer of 2006, the chain was replaced by one or more of the defendants with "heavy plastic barriers which blocked vehicular traffic, and impeded pedestrian traffic." Despite plaintiffs' protests that they had a right to use the right of way, defendants refused to remove the barriers.

In response, plaintiffs filed an action[9] against defendants, alleging that, according to the condominium declaration, plaintiffs had an express easement over the right of way. The

---

Development Corporation, which created the Harrington Court Condominium. Goodwin next conveyed its remaining unit to Wellington Marina LLC, which thereafter constructed a marina on that land unit.

[9] The plaintiffs' complaint requested a temporary restraining order and preliminary injunction enjoining defendants from installing permanent barriers across the right of way. Further, plaintiffs sought the entry of a declaratory judgment holding that plaintiffs have an easement over the claimed right of way. Finally, plaintiffs requested an injunction that would require

plaintiffs also argued, in the alternative, that they had an implied or prescriptive easement over the right of way.

A two-day, jury-waived trial commenced in June 2010. The trial justice issued a written decision setting forth his factual findings and denying plaintiffs' easement claims.[10] Specifically, the trial justice concluded that plaintiffs had failed to prove that the declaration and its amendments reserved an express easement over the claimed right of way. The trial justice determined "that there is no amenity located in, by, along or adjacent to Narragansett Bay which [p]laintiffs are entitled to access." He further found "that the intent of the [d]eclarant * * * was to provide access to the proposed marina of Phase VI."[11] Accordingly, he found that "no right of way was created by § 14.2 of the First Declaration."

The trial justice next found that, "[w]hen the [d]efendants' [p]remises [were] withdrawn, the Third Amendment did not grant to the [p]laintiffs or its members any right to use the proposed marina" and, "[t]herefore, no right of way was necessary to access any such amenity[.]"[12]

---

defendants to remove the barriers. The defendants counterclaimed for trespass—which claim the trial justice ultimately denied—but that issue is not before us on appeal.

[10] The trial justice's decision is set forth in <u>Wellington Condominium Association v. Wellington Cove Condominium Association</u>, No. NC-2007-353, 2010 WL 3393143 (R.I. Super. Ct. Aug. 25, 2010). We need not repeat all of his findings; we reference only those principally pertinent to our discussion of the issues presented on appeal. In this decision, the trial justice also dissolved the June 17, 2009 preliminary injunction that was in place at the time of trial.

[11] The issue of marina access—if any—is not before this Court.

[12] The trial justice also addressed plaintiffs' remaining arguments regarding written instruments that they contend created an express easement. For example, he found that "the Third Amendment, and all subsequent documents in [d]efendants' chain of title did not create a right of way for the benefit of the [p]laintiffs." On appeal, however, plaintiffs challenge the trial justice's conclusions with respect to the operative language of section 14.2 of the declaration.

As to plaintiffs' claim of an implied easement, the trial justice explained that, when a common owner severs his or her own land and retains the dominant estate, an implied easement over the servient estate can arise only if the easement is "absolutely necessary" to the use and enjoyment of the dominant estate. In reaching this decision, however, the trial justice, noting that plaintiffs' premises constituted the dominant estate and the withdrawn parcel was the servient estate, concluded that the declarant, who withdrew the real estate, retained the dominant estate and failed to reserve an easement for itself. According to the trial justice, "the [d]eclarant withdrew the [d]efendants' Premises (alleged servient estate)—i.e. severed it from the Full Property—in 1992 and did not reserve a right of way for the [p]laintiffs' Premises (alleged dominant estate) via the Third Amendment." Therefore, the trial justice determined that the right of way was not absolutely necessary for plaintiffs' use of their properties because they were able to access Kirwins Fifth Ward Lane and their tennis courts through the access point on Harrington Street.[13]

Final judgment was entered on September 8, 2010, in favor of defendants. The plaintiffs filed a notice of appeal on September 16, 2010. After the case came before us on February 29, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised should not summarily be decided, we concluded that cause had been shown and assigned the case to the Court's plenary calendar. Wellington Condominium Association v. Wellington Cove Condominium Association, 47 A.3d 331, 331 (R.I. 2012). Accordingly, the case now comes before us after full briefing and argument.

---

[13] Specifically, the trial justice indicated that plaintiffs did not need the right of way to access the tennis courts because the alternative method of entry—a two-foot strip of the estate—was "adequate to access the gates on the westerly side of [p]laintiffs' tennis courts."

On appeal, plaintiffs argue that the trial justice erred when he found that they had not proven the existence of an express easement. In particular, plaintiffs challenge the trial justice's reliance on language that does not appear in the declaration, and they contend that section 14.2 of the declaration entitles plaintiffs to an express easement over the right of way. Additionally, plaintiffs argue that the trial justice committed reversible error when he applied the wrong legal standard to plaintiffs' implied easement claim. The plaintiffs request that this Court remand the case for additional fact-finding on plaintiffs' claims for express easement and implied easement by grant.

Conversely, defendants argue that plaintiffs failed to establish that an express easement was set forth in the declaration of condominium. The defendants also argue that plaintiffs failed to establish an implied easement over the right of way. According to defendants, because plaintiffs retained the dominant estate after the withdrawal by Newport Partners, plaintiffs were required to demonstrate "absolute necessity" to support their claim of an implied easement. The defendants further argue that, at the time of severance, the claimed right of way was neither apparent nor obvious, and that it was not permanent. Finally, defendants contend that plaintiffs failed to prove that the declarant intended to create a right of way across defendants' premises.

**Standard of Review**

"It is well established that the factual findings of a trial justice sitting without a jury are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence." Hernandez v. JS Pallet Co., 41 A.3d 978, 982 (R.I. 2012) (quoting Fisher v. Applebaum, 947 A.2d 248, 251 (R.I. 2008)); see also Burke-Tarr Co. v. Ferland Corp., 724 A.2d 1014, 1018 (R.I. 1999). "If, as we review the record, it becomes clear to us that 'the record indicates that competent evidence

- 7 -

supports the trial justice's findings, we shall not substitute our view of the evidence for [that of the trial justice] even though a contrary conclusion could have been reached.'" Hernandez, 41 A.3d at 982 (quoting Grady v. Narragansett Electric Co., 962 A.2d 34, 41 (R.I. 2009)); see also Tim Hennigan Co. v. Anthony A. Nunes, Inc., 437 A.2d 1355, 1357 (R.I. 1981).

In litigation over asserted rights to an easement, the party claiming the easement has a heightened burden of proof of clear and convincing evidence because of the policy considerations against placing undue burdens upon property. See Ondis v. City of Woonsocket ex rel. Treasurer Touzin, 934 A.2d 799, 803 (R.I. 2007) ("[W]e have held an individual who seeks to establish an easement upon the land of another to a high degree of proof." quoting Berberian v. Dowd, 104 R.I. 585, 589, 247 A.2d 508, 510-11 (1968)). Indeed, "[a]lthough a plaintiff in a civil action normally must meet his burden by only a preponderance of the evidence, the plaintiff must overcome a higher clear and convincing standard to prove an easement." Id. (citing Berberian, 104 R.I. at 590, 247 A.2d at 511); see also Foley v. Lyons, 85 R.I. 86, 90, 125 A.2d 247, 249 (1956); Tefft v. Reynolds, 43 R.I. 538, 543, 113 A. 787, 789 (1921).

## Discussion

### Express Easement

Section 14.2 of the declaration states, in pertinent part, that "the [d]eclarant will provide reasonable rights of way over and across the real estate withdrawn necessary to provide adequate access to any amenity located in, by, along or adjacent to Narragansett Bay." (Emphasis added.) The plaintiffs argue that this section created an express easement over defendants' land for plaintiffs' use and applies to amenities located on plaintiffs' property that are located along Narragansett Bay. According to plaintiffs, the tennis courts qualify as such an amenity, and the

trial justice erred when he found that section 14.2 did not create an express easement over the withdrawn real estate. The plaintiffs base their appellate contentions on the trial justice's use of terms that are not explicitly found in section 14.2. Indeed, plaintiffs point out that the trial justice's analysis focused on whether any rights of way reasonably were necessary for access to amenities under section 14.2, but they then contend that he "went astray" when he added language suggesting that the amenity must be a part of defendants' premises. The trial justice declared that "[w]hen the [d]efendants' Premises was withdrawn, the [p]laintiffs had no right to use any amenity in, by, along or adjacent to Narragansett Bay located within the [d]efendants' Premises. Therefore, there was no need for a right of way to access any such amenity." (Emphasis added.) The highlighted language does not appear in section 14.2 of the declaration, and plaintiffs allege that this is the basis for what they contend was the trial justice's error.

We have held that, "[w]hen construing an instrument that purportedly creates an easement, it is this Court's 'duty * * * to effectuate the intent of the parties.'" Hilley v. Lawrence, 972 A.2d 643, 649 (R.I. 2009) (quoting Carpenter v. Hanslin, 900 A.2d 1136, 1147 (R.I. 2006)); see also Mattos v. Seaton, 839 A.2d 553, 557 (R.I. 2004). "Nevertheless, '[w]hen the written terms of an agreement are clear and unambiguous, they can be interpreted and applied to the undisputed facts as a matter of law.'" Hilley, 972 A.2d at 649 (quoting Carpenter, 900 A.2d at 1147); see also Mattos, 839 A.2d at 558. "Additionally, where terms of [an] easement are clear and unambiguous, neither oral testimony nor extrinsic evidence will be received to explain the nature or extent of the rights acquired." Hilley, 972 A.2d at 649 (quoting Carpenter, 900 A.2d at 1147); see also Waterman v. Waterman, 93 R.I. 344, 349, 175 A.2d 291, 294 (1961).

After careful review, we are satisfied that the relevant language of the declaration is clear and unambiguous; section 14.2 grants "reasonable rights of way over and across" defendants'

property "to provide adequate access" only with regard to amenities that are located "in, by, along or adjacent to Narragansett Bay." The purported amenity in question—the tennis courts or, for that matter, access to Kirwins Fifth Ward Lane—does not fall within section 14.2. We agree with the trial justice that "the intent of the [d]eclarant [in] including § 14.2 in the First Declaration was to provide access to the proposed marina"; plainly, this is precisely the amenity to which section 14.2 refers. Even if the tennis courts could be considered an "amenity" under section 14.2, this facility bears no relationship to Narragansett Bay. Indeed, the tennis courts are separated from the harbor by defendants' parcel. We are of the opinion that inclusion of "Narragansett Bay" both limits and defines the type of "amenity" to which the section referred. We read the section to mean that any such amenity must be directly connected to or linked with Narragansett Bay. A marina fits the bill; tennis courts do not. Therefore, we affirm the trial justice's decision with respect to plaintiffs' claim of an express easement.

We pause to note that the trial justice's inclusion of the phrase "located within the [d]efendants' Premises"—which does not appear in section 14.2 of the declaration—amounts to surplusage. The trial justice's decision was not premised on any finding concerning upon whose property the amenities must be located to qualify as an easement. Instead, the trial justice properly focused his analysis on the precise language of section 14.2 and the specific easement rights that were reserved—those relating to the marina. He stated that "[t]he [c]ourt has found as a fact that there is no amenity located in, by, along or adjacent to Narragansett Bay which [p]laintiffs are entitled to access," and that finding formed the basis of his conclusion. We discern no error in that conclusion.

**Implied Easement**

We now turn to the more troubling issue in this case. When the trial justice discussed plaintiffs' implied easement claim, he began by noting that "[t]he Rhode Island Supreme Court discussed the difference between an implied reservation of an easement and an implied grant of an easement in Wiesel v. Smira, 49 R.I. 246, 142 A. 148 (1928)." In that case, this Court explained that

> "the distinction is based upon the theory that the common owner's deed of a portion of his land conveys all essential rights which he has, and that whatever is apparent and continuously necessary to the beneficial use and enjoyment of the granted property is intended to be conveyed so far as the grantor could do so. * * * From this it is clear that where the owner creates a severance by sale of the servient portion of his premises[,] no implication of intention to reserve any rights to himself as owner of the quasi dominant estate ought to be made unless such rights are <u>absolutely necessary</u> to the use of the property reserved." Id. at 249, 142 A. at 149 (emphasis added).

Relying on this language, the trial justice reasoned that, "when a common owner creates a severance of his own land and retains the dominant portion * * *, he is presumed to reserve whatever rights he needs in the servient portion of the real estate." Thus, he found that "an implied easement can only arise in such a situation if the rights in the servient estate are absolutely necessary to the dominant estate."[14]

However, when he applied these principles to the facts of this case, it is our opinion that he conflated the estates that were retained by the declarant and the portion that comprised plaintiffs' premises. The trial justice concluded that, when "the [d]eclarant withdrew the [d]efendants' Premises[,]" the declarant did not retain the servient estate. In effect, the trial

---

[14] We note that, in Wiesel v. Smira, 49 R.I. 246, 253, 142 A. 148, 151 (1928), the easement involved underground property. See also Burke-Tarr Co. v. Ferland Corp., 724 A.2d 1014, 1019 (R.I. 1999) ("The right to the flowage of water and the disposal of waste underneath the lands of another can be acquired * * * by implication from the severance of heritage ownership * * *.").

justice found that plaintiffs, the original condominium association, failed to reserve an easement for its premises when the parcel was severed. Having made this determination, the trial justice in his analysis then proceeded under the framework of an implied easement by reservation, which triggers the more exacting standard that the use of the easement must be "absolutely necessary." Wiesel, 49 R.I. at 249, 142 A. at 149. The trial justice declared that "the [c]laimed [right of way] is not 'absolutely necessary' for [plaintiffs]" and, proceeding from that premise, he held that "[p]laintiffs have failed to prove the existence of an implied easement by reservation by clear and convincing evidence.'" This Court, however, is not persuaded that this was the proper analysis because it rests on the erroneous conclusion that plaintiffs conveyed a portion of land without expressly reserving a right of way for their use. We are of the opinion that, in the circumstances of this case, the declarant withdrew and retained a portion of the premises—the servient estate—for its own commercial purposes, thereby in effect transferring the dominant estate to plaintiffs.

Our examination of the implied easement claim turns on a determination of which party, for purposes of easement principles, was the common owner of the property vested with the right to reserve an easement unto itself. As we confront that challenging question and the remaining issues that stem from it, we are mindful that certain basic tenets of property law do not coalesce easily with complex modern real estate transactions and the law of condominium development and ownership. Indeed, as this case illustrates, we are compelled to apply venerable common law principles of easements against a backdrop of contemporary statutory approaches to real estate ownership. The law of implied easements may not be well-suited to the facts of this complex case, but we nonetheless begin our discussion of the grantor/grantee dynamic and the type of implied easement that may or may not arise when the declarant severs the real estate

- 12 -

from the condominium and retains it for further development. Although the severance was characterized as a withdrawal of real estate, it constitutes a division of a parcel of land, resulting in separate parcels of real estate.[15]

According to the preamble of the declaration, the "owner in fee simple" of the entire parcel was the declarant, an entity that is not a party to this action, to the extent that its corporate existence even continues. Under section 1.1 of the declaration, the declarant is defined as "the owner in fee simple of the Real Estate." The declarant reserved to itself the option to withdraw certain real estate from the parcel in accordance with section 14.2. When Newport Partners was assigned the same rights as the declarant, Newport Partners effectively stepped into the shoes of the declarant. Therefore, it was the declarant that withdrew the real estate and not plaintiffs. The plaintiffs were powerless to prevent this assignment to Newport Partners, and they equally were incapable of blocking the withdrawal of defendants' parcel or reserving anything to themselves. The plaintiffs conveyed nothing and cannot be deemed to be grantors or characterized as a common owner who conveys a portion of its estate. The plaintiffs simply claim that the disputed right of way was used and enjoyed during unity and for many years thereafter.

Because the common owner severed a portion of its estate and retained it for further development, a different analysis must be undertaken. Rather than framing the claim as an implied easement by reservation, it must be examined as an implied easement by grant in favor of WCA, the owner of the dominant parcel.

"We have previously held that[,] '[u]pon the severance of an heritage, a grant will be implied of all those continuous and apparent easements which have in fact been used by the

---

[15] Withdrawal and subdivision are close cousins; here, the withdrawal of Phases IV and VI was akin to a subdivision of land. General Laws 1956 § 45-23-32(51) defines "[s]ubdivision" as "[t]he division or re-division, of a lot, tract or parcel of land into two or more lots, tracts, or parcels."

owner during the unity, though they have no legal existence as easements.'" Catalano v. Woodward, 617 A.2d 1363, 1367 (R.I. 1992) (quoting Kenyon v. Nichols, 1 R.I. 411, 417 (1851), overruled on other grounds by Knowles v. Knowles, 12 R.I. 400, 400 (1879)); see also Ondis, 934 A.2d at 805; Wiesel, 49 R.I. at 250, 142 A. at 150 (explaining that, "when certain characteristics, such as continuity, apparency, and necessity exist, a grant will be implied" and that "the test for necessity is whether the easement is reasonably necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made"). Accordingly, the standard for an easement by grant requires that the party claiming an easement show by clear and convincing evidence that the claimed easement was (1) apparent, (2) permanent, and (3) reasonably necessary for the enjoyment of the claimant's parcel prior to severance. See Catalano, 617 A.2d at 1367; see also Vaillancourt v. Motta, 986 A.2d 985, 987-88 (R.I. 2009); Hilley, 972 A.2d at 650; Ondis, 934 A.2d at 803, 805.

The trial justice did not make any findings or legal conclusions with respect to whether an implied easement by grant existed when the declarant severed the estate and retained the servient estate for itself. Therefore, the claim by plaintiffs must be examined under these principles of implied easement by grant.

Furthermore, the record in this case may not contain sufficient facts upon which the trial justice properly could pass upon the existence of an implied easement by grant, necessitating the taking of additional testimony. Accordingly, we vacate that portion of the trial justice's judgment with respect to the plaintiffs' claim of implied easement and remand the case for further evidence and fact-finding to ascertain whether the plaintiffs have an implied easement by grant over the claimed right of way.

**Conclusion**

In conclusion, for the reasons set forth herein, the plaintiffs' appeal is sustained in part and denied in part. We vacate the judgment of the Superior Court with respect to its determination of the claim of an implied easement by reservation and affirm the judgment in all other respects. We remand this case to that court for further proceedings in accordance with this opinion.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**  Wellington Condominium Association et al. v. Wellington Cove Condominium Association et al.

**CASE NO:**  No. 2010-437-Appeal.
(NC 07-353)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  June 26, 2013

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**  Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Stephen P. Nugent

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  Timothy T. More, Esq.

For Defendants:  Stacey P. Nakasian, Esq.