**Supreme Court**

No. 2012-247-Appeal.
(PC 11-5408)

Cynthia Caluori                    :

              v.                    :

Dexter Credit Union.               :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Cynthia Caluori                    :

v.                    :

Dexter Credit Union.              :

Present: Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**   The plaintiff, Cynthia Caluori, appeals from a Superior Court judgment, after a bench trial, in favor of the defendant, Dexter Credit Union (Dexter), denying her claim for an easement over the defendant's property.  Mrs. Caluori had sought a declaratory judgment that an easement by prescription and an easement by implication existed that gave her the right to use a paved driveway (the disputed property) on Dexter's property.  On appeal, the plaintiff argues that the trial court justice erred in finding that she had acknowledged the defendant's superior title and that she had not occupied the disputed property with hostility and under a claim of right.  Further, the plaintiff argues that the trial justice erred in finding that Mrs. Caluori had used the disputed property openly but not notoriously.  Finally, the plaintiff asserts that the trial justice erred in finding that she did not establish an easement by implication.

This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided.   After

considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we vacate in part and affirm in part the judgment of the Superior Court.

## I

### Facts and Procedural History

In 1981, Mrs. Caluori and her late husband, Anthony, purchased from Dorothy Feeney a parcel of real estate located at the corner of West Greenville Road and Danielson Pike in the Town of Scituate, designated as Assessor's Plat No. 16, lot 18 (Lot 18). At the time of the sale, Mrs. Feeney also owned an adjacent lot (Lot 19) that borders Lot 18 to the north and east, with the bulk of the parcel being located to the east of Lot 18. When Mrs. Feeney conveyed the parcel to the Caluoris, she specifically excluded a portion of Lot 18 (as it then existed) measuring approximately 21'x70'x18'x70' containing the paved driveway, which then became part of Lot 19.

Since at least 1971, Lot 19 has been the site of a bank. Mrs. Feeney leased the property, in succession, to Industrial National Bank, Fleet Bank, and Bank of America.[1] The disputed property is adjacent to the northern boundary of Lot 18 and provides access to Lot 19 from West Greenville Road. The plaintiff's deed to Lot 18 states that "[t]his conveyance is made subject to that certain lease between Dorothy S. Feeney, lessor, and Industrial National Bank of Rhode

---

[1] Through this property one may glimpse an era in Rhode Island's banking history. Industrial National Bank was created by merger in the early 1950s, yet operated under a state charter dating to 1791. In 1982, Industrial National Bank changed its name to Fleet Financial Group and, in 2004 Fleet merged with Bank of America. Ted Nesi, Providence National Bank, a sign of The Times, WPRI.com Blogs (Sept. 13, 2010, 5:34 PM), http://www.wpri.com/2010/09/13/providence-national-bank-a-sign-of-the-times/

Island, lessee * * * to the extent, if any, that any portion of the demised premises intrude upon the lot conveyed by this deed."

At the time the Caluoris purchased Lot 18, there was only one building on the property— a two-unit apartment house located on the southwest corner of the lot, near the intersection of West Greenville Road and Danielson Pike. The plaintiff and her husband moved into one apartment and rented the second apartment to tenants. In 1983, Anthony Caluori moved a remodeled garage onto Lot 18, north of the apartment house, for use as a two-unit commercial building. The plaintiff leased this building to a variety of commercial enterprises; since 1998 it has been used by her son, Christopher Caluori, as an office for his insurance agency. The plaintiff testified that tenants of the apartment building have used the driveway on the disputed property since 1981 and that employees and customers of the commercial tenants have used the driveway since 1983. Because the commercial building is located within only eighteen feet of the northernmost border of Lot 18, the disputed property provides room for a turning radius for cars parked alongside the commercial building to access West Greenville Road.

On November 24, 2010, Dexter purchased Lot 19. Dexter applied to the Scituate Planning Board (board) for approval of a plan to demolish the existing bank building on Lot 19 and to build a new building on the site to house a credit union branch. The plan entailed moving the driveway on the disputed property north, and installing landscaping that blocks the entrance to the driveway.[2] On September 20, 2011, the board approved Dexter's plan over plaintiff's objection. Mrs. Caluori did not appeal the board's decision, however. Instead, she filed a verified complaint seeking a declaratory judgment that she possesses a prescriptive easement and

---

[2] According to Dexter, the property was developed in accordance with the approved plans and construction on Lot 19 is now complete.

an easement by implication over the disputed property; she also sought an injunction that would enjoin Dexter from terminating her access to the driveway.

On October 31, 2011, Dexter filed a counterclaim alleging trespass and seeking to quiet title. On December 19, 2011, plaintiff amended her complaint to add three additional counts related to cesspools on Lot 19 that are connected to Lot 18. On January 17, 2012, the parties filed a stipulation dismissing with prejudice plaintiff's three counts related to cesspools as well as defendant's counterclaims for trespass and quiet title.

A three-day bench trial was held, commencing on March 5, 2012. On April 11, 2012, the trial justice issued a written decision denying plaintiff's claims for an easement by prescription and easement by implication, thus denying her request for a permanent injunction. Final judgment was entered on April 13, 2012, and plaintiff timely filed the instant appeal. Further facts will be provided as may be necessary to discuss the issues raised on appeal.

**II**

**Standard of Review**

"A Superior Court decision granting or denying declaratory relief is reviewed with great deference by this Court." Town Houses at Bonnet Shores Condominium Association v. Langlois, 45 A.3d 577, 581 (R.I. 2012) (quoting Downey v. Carcieri, 996 A.2d 1144, 1149 (R.I. 2010)). In a declaratory-judgment action, "a Superior Court justice makes all findings of fact without a jury." Id. (quoting Downey, 996 A.2d at 1149). We give great weight to these findings, and will not disturb them "absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." Id. (quoting Downey, 996 A.2d at 1149). "A trial justice's findings on questions of law, however, are reviewed de novo." Id. (quoting Downey, 996 A.2d at 1149).

## Discussion

On appeal, plaintiff argues that the trial justice erred in finding that Mrs. Caluori's acceptance of the deed to Lot 18 constituted an acknowledgement of superior title sufficient to defeat her claim that she occupied the disputed property with hostility. The plaintiff also asserts that the trial justice relied on a notice of intent to dispute (notice) that was not in evidence. Further, plaintiff argues that the trial justice erred in finding that Mrs. Caluori used the disputed property openly but not notoriously. Finally, plaintiff argues that the trial justice erroneously applied the standard for an easement by necessity to the claim of easement by implication.

The defendant argues that plaintiff failed to offer clear and convincing evidence that a prescriptive easement exists. The defendant asserts that the trial justice correctly applied the standard for an implied easement and that because the driveway was not "reasonably necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made," her denial of plaintiff's claim of easement by implication was correct. Vaillancourt v. Motta, 986 A.2d 985, 987-88 (R.I. 2009) (quoting Wiesel v. Smira, 49 R.I. 246, 250, 142 A. 148, 150 (1928)).

## A

### Prescriptive Easement

"One who claims an easement by prescription bears the burden of establishing 'actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years.'" Butterfly Realty v. James Romanella & Sons, Inc., 45 A.3d 584, 588 (R.I. 2012) (quoting Hilley v. Lawrence, 972 A.2d 643, 651–52 (R.I. 2009)). A plaintiff seeking to establish a prescriptive

easement must meet a higher burden of proof; "[e]ach element must be proved * * * 'by clear and satisfactory evidence.'" Id. at 589 (quoting Hilley, 972 A.2d at 652).

The trial justice found that plaintiff established by clear and convincing evidence that her use of the disputed property was actual, open, and continuous for the ten-year statutory period. However, the trial justice found that plaintiff had not established that she used the disputed property in the requisite notorious or hostile manner under a claim of right. We shall address these elements separately.

**1**

**Hostile Use and Claim of Right**

Requiring a claim of right "is the same as requiring hostility, in that both terms simply indicate that the claimant is holding the property with an intent that is adverse to the interests of the true owner." DiPippo v. Sperling, 63 A.3d 503, 508 (R.I. 2013) (quoting Tavares v. Beck, 814 A.2d 346, 351 (R.I. 2003)). "For use of another's land to qualify as hostile, '[i]t is sufficient if one goes upon the land openly and uses it adversely to the true owner * * * .'" Butterfly Realty, 45 A.3d at 589 (quoting Reitsma v. Pascoag Reservoir & Dam, LLC, 774 A.2d 826, 831 (R.I. 2001)). This use has been characterized as such usage "as would entitle the owner to a cause of action against the intruder [for trespass]." Tavares, 814 A.2d at 351 (quoting 16 Powell on Real Property, § 91.05[1] at 91-23 (2000)).

Recently, this Court held that "the objective manifestations that another has superior title, made after the statutory period and not made to settle an ongoing dispute, are poignantly relevant to the ultimate determination of claim of right * * * during the statutory period." Cahill v. Morrow, 11 A.3d 82, 93 (R.I. 2011). The trial justice, in applying this precedent, found that plaintiff "made several arrangements illustrating her acknowledgement and acceptance of

Dexter's superior title." First, the trial justice referenced plaintiff's knowledge that the deed to Lot 18 did not include the disputed property and her knowledge that it was subject to the 1971 lease to Industrial National Bank "to the extent, if any, that any portion of the demised premises intrude upon the lot conveyed by this deed." The trial justice acknowledged the distinction between "claim of right" and "color of title" and noted that "mere knowledge concerning a record owner's superior property right" is not sufficient to destroy a claim for prescriptive easement. See Cahill, 11 A.3d at 90-91.

The trial justice also considered an "acknowledgement of [defendant's] superior title" in the form of a "Notice of Intent to Dispute" filed by plaintiff in 1992, regarding Fleet National Bank's (then-tenant of Lot 19) encroachment relating to maintenance of its drive-up window. She then concluded that, in light of plaintiff's "acknowledgement of Dexter's superior title in the Warranty Deed and the 'Notice of Intent to Dispute,'" plaintiff had failed to demonstrate the requirements of hostility and claim of right by clear and convincing evidence. We deem this to be error.

We initially observe that the notice, upon which the trial justice placed considerable emphasis, was not entered into evidence at trial.[3] The trial justice's decision references the "Caluori deposition" as the source of the information regarding this notice, yet no deposition was entered into evidence. Accordingly, it was error for the trial justice to rely on facts not in evidence in finding that plaintiff had acknowledged another's superior title in Lot 19. See Woodstock v. Sherman, 796 A.2d 450, 452 (R.I. 2002) (holding that a trial justice's reliance on facts not in evidence was reversible error). Even if the notice had been admitted, however, its

---

[3] The notice was attached as an exhibit to "Defendant's Supplemental Bench Memorandum Addressing Plaintiff's Claims of Easement Rights," filed in the Superior Court on March 5, 2012, the first day of the trial.

contents would not support defendant's argument. In its bench memorandum, defendant made clear that the purpose of the notice was to dispute encroachment "in an entirely different location than the area involved in this action." On this point, plaintiff and defendant agree; the notice concerns the eastern boundary of Caluori's property, not the northern boundary where the driveway is located.

Similarly, the fact that plaintiff purchased Lot 18 in 1981 with full knowledge that Mrs. Feeney excluded the disputed property does not preclude the possibility that plaintiff used the property adversely thereafter. The 1981 deed may well be relevant to plaintiff's claim of easement by prescription, but it is not conclusive. Our review of the record reveals sufficient evidence adduced at trial upon which a factfinder could conclude that all the requisite elements of an easement by prescription were established. Whether such evidence is clear and convincing we leave to the factfinder in the first instance. Accordingly, we direct the Superior Court on remand to make further findings of fact relative to plaintiff's alleged adverse use of the disputed property subsequent to her acceptance of the deed in 1981.

**2**

**Notorious Use**

The correct inquiry, in establishing notorious use, is whether plaintiff "used the property in a manner consistent with how owners of similar property would use such land and whether these uses were inclined to attract attention sufficient to place the world on constructive notice." Carnevale v. Dupee, 853 A.2d 1197, 1201 (R.I. 2004). We have long held that a claimant must show "objective trespassory acts that are adverse to the rights of the true owner, not acts that are inconsistent to the use of the true owner." Butterfly Realty, 45 A.3d at 590. "It is sufficient if one goes upon the land openly and uses it adversely to the true owner, the owner being

chargeable with knowledge of what is done openly on his land." Stone v. Green Hill Civic Association, Inc., 786 A.2d 387, 391 (R.I. 2001) (quoting Greenwood v. Rahill, 122 R.I. 759, 763, 412 A.2d 228, 230 (1980)). The trial justice found that plaintiff used the disputed property openly, but she also found that, because her use was "in common with the general public" and because she did not speak to the record owner about her use of the disputed property, Mrs. Caluori "did not take an affirmative act" to put the record owner on notice.

In Butterfly Realty, 45 A.3d at 586, access to the plaintiff's loading dock was impossible without traversing the defendant's property, because the plaintiff's building was located so close to the property line. Despite a recorded easement that the defendant had granted to the plaintiff, a dispute arose about the precise size of the easement, culminating with the defendant placing a barrier on the border of the easement that made it impossible for trucks to pull directly up to the plaintiff's rear loading dock. Id. at 587. As with the driveway in the instant case, the disputed area in Butterfly Realty was used by the tenants and customers of both parties. Id. at 590. In Butterfly Realty, this Court held "[t]here is no legal precedent, however, requiring [the plaintiff] to prove that its tenants' use was inconsistent with [the defendant's] use of the disputed area. In fact, in many prescriptive easement cases, the use made by the claimant is entirely consistent with the use made by the true owner." Id.

In this case, evidence was presented at trial that plaintiff, her tenants, and their invitees used the disputed property to access the commercial building on Lot 18 from West Greenville Road continuously for a period of at least ten years. There was further evidence that the disputed property was also used by bank patrons and invitees as well as by members of the general public who would use the driveway as a cut-through to avoid a traffic light.

- 9 -

Despite finding that plaintiff's use of the disputed property was "certainly open," the trial justice held that the use was not notorious because "Caluori did not take an affirmative act to place Feeney on notice that she was making a claim * * * ." This holding misconstrues the meaning of notoriety under our case law. The affirmative act must be "inclined to attract attention sufficient to place the world on constructive notice." Carnevale, 853 A.2d at 1201. Once the world is on notice, the record owner of the property is presumed to be on notice, "the owner being chargeable with knowledge of what is done openly on his land." Butterfly Realty, 45 A.3d at 589 (quoting Reitsma, 774 A.2d at 831).

Here, the trial justice found that plaintiff "did enter and occupy the [d]isputed [p]roperty in the manner in which one would ordinarily enter and occupy a driveway," and that her residential and commercial tenants, staff, and customers had used the disputed property for ingress, egress, and parking consistently and continuously for more than ten years. The trial justice also acknowledged the testimony of Gail Thomas Denton, a witness who lived across West Greenville Road from plaintiff and said that he observed plaintiff's property on a daily basis for thirteen years. According to the trial justice, Denton

> "confirmed that from approximately 1999 until the present day he has observed use of the [d]isputed [p]roperty for ingress and egress by Caluori, her tenants, and their guests and invitees. Accordingly, it is clear that the actions by Caluori and her tenants were open, as she and her tenants did not act discreetly, nor try and hide their use of the [d]isputed [p]roperty."

We believe that these factual findings are also sufficient to establish the element of notorious use. In fact, we are hard-pressed to find any significant distinction in our case law between an open use and a notorious use.[4] In Tavares, 814 A.2d at 352, in the context of an

---

[4] We note that the requirements of open and notorious are distinct in some jurisdictions. "To be open the use must be made without attempted concealment. To be notorious it must be known to

- 10 -

adverse-possession claim, we held that an owner is "chargeable with knowing whatever was done openly on the land he owned—whether or not it could be observed from the road or from the boundary of the property." Shortly thereafter, in Carnevale, 853 A.2d at 1201, we said that for purposes of establishing open and notorious use, "[t]he proper inquiry [is] whether the party claiming ownership by adverse possession used the property in a manner consistent with how owners of similar property would use such land and whether these uses [are] inclined to attract attention sufficient to place the world on constructive notice."

In the circumstances of the instant case, where there is evidence showing consistent and continuous use of the driveway for the purpose of gaining access from West Greenville Road to the parking area adjacent to the commercial building on plaintiff's property, a finding of open use is perforce a finding of notorious use. Clearly, plaintiff's use of the disputed property was consistent with how an owner of a similar property would use a driveway. Moreover, we are satisfied that the use by plaintiff, her tenants, and invitees specifically to gain access to Lot 18 would have attracted attention sufficient to place the world on constructive notice of plaintiff's adverse claim. Accordingly, we reverse the decision of the Superior Court with respect to its finding that plaintiff failed to prove by clear and convincing evidence that her use of the disputed property was notorious in nature.

---

some who might reasonably be expected to communicate their knowledge to the owner * * * ." Foot v. Bauman, 129 N.E.2d 916, 919 (Mass. 1955) (quoting 2 American Law of Property § 8.56 (Casner ed. 1952)). We need not ponder over whether there remains any distinction between open and notorious in Rhode Island; in the context of this case, it is clear that here plaintiff has established that her use was both open and notorious.

**B**

**Easement by Implication**

Alternatively, plaintiff argues that the trial justice erred in denying her claim for an easement by implication. "We have previously held that[,] '[u]pon the severance of an heritage, a grant will be implied of all those continuous and apparent easements which have in fact been used by the owner during the unity, though they have no legal existence as easements.'" Wellington Condominium Association v. Wellington Cove Condominium Association, 68 A.3d 594, 603 (R.I. 2013) (quoting Catalano v. Woodward, 617 A.2d 1363, 1367 (R.I. 1992)). "An implied easement is predicated upon the theory that when a person conveys property, he or she includes or intends to include in the conveyance whatever is necessary for the use and the enjoyment of the land retained." Hilley, 972 A.2d at 650 (quoting Bovi v. Murray, 601 A.2d 960, 962 (R.I. 1992)). The test for necessity in this context is "whether the easement is reasonably necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made." Vaillancourt, 986 A.2d at 987-88 (quoting Wiesel, 49 R.I. at 250, 142 A. at 150).

The plaintiff argues that the trial justice erred by conflating the test for easement by necessity[5] with that of easement by implication. We are satisfied, however, that the trial justice applied the appropriate standard, considering the facts and circumstances at the time of severance. "The proper inquiry for the existence of an easement by implication * * * focuses on the facts and circumstances at the time of severance." Vaillancourt, 986 A.2d at 988.

---

[5] "An easement by necessity 'is limited to a factual scenario, in which a single owner partitions land and fails to reserve an express easement in favor of the parcel that has become landlocked as a result of the severance.'" Hilley v. Lawrence, 972 A.2d 643, 653 (R.I. 2009) (quoting Ondis v. City of Woonsocket ex rel. Touzin, 934 A.2d 799, 806 (R.I. 2007)).

The trial justice noted that, at the time of severance, the commercial building did not exist and that there was another curb cut capable of providing access for tenants of the apartment building. Notwithstanding plaintiff's testimony that tenants of the apartment house utilized the disputed property to park their vehicles even before the commercial building was moved onto Lot 18, the trial justice concluded that plaintiff failed to present clear and convincing evidence that an easement over the disputed property was reasonably necessary for the enjoyment of Lot 18 at the time of severance.

We have often stated that, in a declaratory-judgment action, we give great deference to a trial justice's findings of fact, and will not disturb them "absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." Langlois, 45 A.3d at 581 (quoting Downey, 996 A.2d at 1149). We are satisfied that the trial justice appropriately considered and weighed the evidence before her in finding that the plaintiff had not clearly and convincingly proven that the disputed property was reasonably necessary at the time of severance.[6]

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court with respect to the plaintiff's claim of an easement by implication, and we vacate the judgment with respect to the plaintiff's claim of a prescriptive easement. We remand this case to the Superior Court with instructions to re-evaluate the record as it pertains to the claim of a prescriptive easement. On remand, the Superior Court shall permit the parties to supplement the record by offering any

---

[6] We also note that Mrs. Feeney specifically excluded the disputed property from her conveyance of Lot 18, thus negating any suggestion that she intended to include the paved driveway in the conveyance.

- 13 -

additional testimony or other evidence that may assist the factfinder in resolving the issues presented. The Superior Court then shall issue an amended decision and judgment that is consistent with this opinion.[7]

Justice Flaherty did not participate.

---

[7] As we did in Butterfly Realty, we recognize that "[p]rescriptive rights are not favored in the law * * * since they necessarily work corresponding losses or forfeitures of the rights of other persons." Butterfly Realty v. James Romanella & Sons, Inc., 45 A.3d 584, 592 n.8 (R.I. 2012) (quoting 25 Am.Jur. 2d Easements and Licenses § 39 at 536 (2004)).



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**          Cynthia Caluori v. Dexter Credit Union.

**CASE NO:**          No. 2012-247-Appeal.
                           (PC 11-5408)

**COURT:**          Supreme Court

**DATE OPINION FILED:**   November 18, 2013

**JUSTICES:**          Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

              Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

              For Plaintiff:  Phillip J. Laffey, Esq.

              For Defendant:  Lori Caron Silveira, Esq.